SHARON AMOS, KATHY HALL AND EARLINE MARSHALL v. OAKDALE KNITTING COMPANY, AND WALTER MOONEY, III

No. 8917SC770

(Filed 7 May 1991)

**Master and Servant § 10.2 (NCI3d) — employment at will — public policy exception — statutory remedy**

The trial court properly granted defendant's motion for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they had been hourly employees of defendant; plaintiffs learned after completing their workweek that their pay had been reduced substantially below the minimum wage rate; defendant Mooney told plaintiffs they had to work at the reduced pay rate or be fired; plaintiffs refused to work under those conditions and were terminated; and plaintiffs filed an action seeking damages for wrongful discharge. *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, adopted the public policy exception to the employee at will doctrine, but that exception does not apply here because there is a statutory

AMOS v. OAKDALE KNITTING CO.

[102 N.C. App. 782 (1991)]

remedy in the North Carolina courts. Plaintiffs could have continued working and pursued their remedy under N.C.G.S. § 95-25.22.

**Am Jur 2d, Master and Servant §§ 54, 60, 82, 89.**

**Validity of minimum wage statutes relating to private employment. 39 ALR2d 740.**

Judge JOHNSON dissenting.

APPEAL by plaintiffs from judgment entered 6 April 1989 by *Judge Melzer Morgan, Jr.*, in SURRY County Superior Court. Heard in the Court of Appeals 18 January 1990.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellants.*

*Allman Spry Humphreys Leggett & Howington, P.A., by W. Thomas White and W. Rickert Hinnant, for defendant-appellees.*

PARKER, Judge.

Plaintiffs Sharon Amos, Kathy Hall and Earline Marshall appeal from a judgment dismissing their action pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) for failure to state a claim on which relief can be granted. Plaintiffs instituted this action seeking damages for wrongful discharge arising out of their employer's alleged violation of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1 *et seq.* In their complaint plaintiffs alleged that prior to their termination, they were employed by defendant Oakdale Knitting Company in Surry County, North Carolina. On 25 February 1988, after completing their workweek, plaintiffs learned that their pay had been reduced to $2.18 per hour, substantially below the North Carolina minimum wage rate of $3.35 per hour. When plaintiffs returned to work on 29 February 1988, they asked their supervisor why their pay had been reduced below minimum wage. The supervisor referred them to Walter Mooney, III, one of the owners of defendant company. Defendant Mooney told plaintiffs they either had to work at the reduced pay rate or they were fired. Plaintiffs refused to work under these conditions and were terminated.

Before filing answer, defendants moved to dismiss plaintiffs' complaint pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). In the order granting defendants' motion, the trial judge stated that discharging

an at will employee for refusing to work for substantially less than the minimum wage offended the court and appeared to violate the public policy of the State as set out in N.C.G.S. § 95-25.3, but that under the decision in *Coman v. Thomas Manufacturing Co.*, 91 N.C. App. 327, 371 S.E.2d 731 (1988), the public policy exception to the doctrine of employment at will was "limited specifically to instances where an employee [sic] attempts to interfere with testimony in a legal proceeding" and, therefore, plaintiffs' action had to be dismissed.

In reviewing a dismissal pursuant to Rule 12(b)(6) we accept as true all allegations of fact. *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970). Dismissal under Rule 12(b)(6) is proper when any one of the following conditions is satisfied: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 333 S.E.2d 222 (1985)).

At the outset we note that defendants contend that plaintiffs' action is preempted by the federal Fair Labor Standards Act, 29 U.S.C. app. §§ 201 *et seq.* The issue of preemption is a constitutional question arising under the supremacy clause. U.S. Const. art. VI, cl. 2. Nothing in the record suggests that defendants raised the issue of preemption before the trial court and the trial court did not rule on this issue in granting the motion to dismiss. For this reason, we will not review defendants' contentions with regard to this issue. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 428, 269 S.E.2d 547, 577 (1980).

On appeal plaintiffs contend that our Supreme Court in reversing the Court of Appeals' decision in *Coman v. Thomas Manufacturing Co.*, 91 N.C. App. 327, 371 S.E.2d 731 (1988), *rev'd*, 325 N.C. 172, 381 S.E.2d 445 (1989), adopted the public policy exception to the employment at will doctrine and that their complaint now states a claim for relief for wrongful termination. No question exists as to whether plaintiffs were employees at will.

We agree with plaintiffs that *Coman* adopted the public policy exception to the employee at will doctrine. *Id.* at 175, 381 S.E.2d at 447. The question, therefore, is whether this judicially adopted exception applies in the case at bar thereby entitling plaintiffs

AMOS v. OAKDALE KNITTING CO.

[102 N.C. App. 782 (1991)]

to maintain their action for wrongful discharge. For the reasons stated herein, we hold that it does not.

Without question, payment of the minimum wage is the public policy of North Carolina. N.C.G.S. § 95-25.1(b) states:

> The public policy of this State is declared as follows: The wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State without jeopardizing the competitive position of North Carolina business and industry.

N.C.G.S. § 95-25.1(b) (1985). To this end the legislature has mandated that effective 1 January 1983 every employer who is not exempt from the legislation will pay a minimum wage of at least three dollars and thirty-five cents ($3.35) per hour. N.C.G.S. § 95-25.3(a) (1985). Moreover, in furtherance of this policy the legislature provided a remedy for the employee in the event the employer failed to comply with mandates of the Wage and Hour Act. N.C.G.S. § 95-25.22 provides that an employee may maintain an action in the General Court of Justice to recover unpaid minimum wages with interest thereon; that the court may in its discretion award exemplary damages in the' amount of the recovery; and that the court may award costs and reasonable attorneys' fees to the employee. N.C.G.S. §§ 95-25.22(a), (b) and (d) (1985). The legislature also provided a remedy in the event the employer retaliates against the employee for exercising this right. N.C.G.S. § 95-25.20(a).

Thus unlike the plaintiff in *Coman*, plaintiffs in this case have available to them a statutory remedy in the North Carolina court. In *Coman* plaintiff had been directed to violate United States Department of Transportation regulations by driving more hours than allowed by the regulations and to falsify his logs. Our Supreme Court recognized that plaintiff might have an additional remedy in federal court but ruled that North Carolina could not fail to provide a forum under the open courts clause of the North Carolina Constitution. N.C. Const. art. I, § 18 (1986). *Coman*, 325 N.C. at 174, 381 S.E.2d at 446.

Plaintiffs argue that they were terminated before they had an opportunity to file a complaint. The complaint in this action alleges, however, that they were told "they either had to work

under the conditions of the reduced pay or they were fired. The Plaintiff[s] refused to work for $2.18 an hour and [were] thereby terminated from [their] employment by the Defendants." Plaintiffs thus had two options: (i) to continue working and pursue their remedy under N.C.G.S. § 95-25.22, which would have made them whole, or (ii) to refuse to work and be fired. Plaintiffs chose the latter. They were not terminated in retaliation for filing a complaint. N.C.G.S. § 95-25.20(a), therefore, has no applicability.

The General Assembly in enacting the Wage and Hour Act expressly recognized that the general welfare of the people necessitated a balancing of the employee's right to earn acceptable wages and the competitive position of North Carolina business and industry. N.C.G.S. § 95-25.1(b). The statutory remedy making the employer potentially liable for up to twice the amount due plus the costs and expenses incurred by the employee in pursuing the claim reflects this balancing.

By this opinion we do not in any way condone an employer's violation of the minimum wage law with the resultant hardship and inconvenience to its employees, and we expressly denounce such unlawful coercive attempts to deprive employees of the wages to which they are lawfully entitled. The legislature having expressed its intent, however, we decline to extend the public policy exception to the employment at will doctrine to afford a cause of action in addition to that provided by statute. Relegating an employee to his statutory remedy is, in our view, a sound policy where, as here, the employee has not been required to engage in unlawful conduct and the employer's statutory violation does not threaten the public safety. *See Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985).

Moreover, limitation of the public policy exception to situations where there is no statutory redress finds support in other jurisdictions. *See, e.g., Wehr v. Burroughs Corp.*, 438 F. Supp. 1052 (E.D. Pa. 1977), *aff'd as modified*, 619 F.2d 276 (3d Cir. 1980), and cases cited therein, in which the district court declined to recognize a separate breach of contract action for age discrimination in violation of the Pennsylvania Human Relations Act, now 43 Pa. Cons. Stat. Ann. §§ 951 *et seq.* (Purdon 1991). Noting that the public policy exception had been applied only where the employee had no other

**AMOS v. OAKDALE KNITTING CO.**

[102 N.C. App. 782 (1991)]

remedy and a valuable social policy would go unvindicated, the court concluded:

> It is clear then that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.

438 F. Supp. at 1055.

For the foregoing reasons, we hold that plaintiffs' complaint as a matter of law does not state a cause of action for wrongful termination.

Affirmed.

Judge GREENE concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I respectfully dissent. I agree with the majority that plaintiffs' complaint as a matter of law does not state a cause of action for wrongful termination. I believe, however, that under notice pleading the complaint sufficiently states a cause of action pursuant to N.C.G.S. § 95-25.22. I would reverse the dismissal to allow plaintiffs to pursue their remedy under that statute.